629 F.2d 637
 Julius Lee GILLESPIE, Plaintiff-Appellant,
v.
Benjamin R. CIVILETTI,* Attorney General, Jack
Wayne, Marshal, Michael O'Brien, Marshal, John Doe,
Superintendents # 1-10, John Doe, Marshals # 11-20, John
Doe, Guards # 21-100, Individually and in their official
capacity and their employees, agents, subordinates and
assignees, and United States of America, Defendants-Appellees.
 No. 78-1447.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 8, 1980.
Decided Oct. 6, 1980.
 
 Wayne Lieb, Institutional Legal Services, Seattle, Wash., for plaintiff-appellant.
 James B. Crum, Asst. U.S. Atty., Spokane, Wash., on brief; Judith A. Corbin, Asst. U.S. Atty., Spokane, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before ANDERSON and SKOPIL, Circuit Judges, and BYRNE,** District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Appellant, Julius Lee Gillespie, appeals the district court's dismissal of his complaint against the United States, the Attorney General, United States Marshals Jack Wayne and Michael O'Brien, and various "John Doe" defendants.[1]
 
 I. BACKGROUND
 
 2
 The appellant, in his pro se complaint, attempted to allege claims against the defendants under 42 U.S.C. § 1983; 42 U.S.C. § 1985; the Federal Tort Claims Act; and the first, fifth, sixth, eighth and fourteenth amendments of the United States Constitution. Appellant's complaint alleged that:
 
 
 3
 1. On or about September 23, 1974, he was taken from a jail cell in Tacoma, Washington, and was extradited to Raleigh, North Carolina, in the custody of United States Marshals Wayne and O'Brien;
 
 
 4
 2. On the way he was incarcerated in federal, state, and local holding facilities in Pocatello and Twin Falls, Idaho; Cheyenne, Wyoming; Kansas City, Missouri; Springfield, Illinois; Lexington, Kentucky; Knoxville, Tennessee; and Charlotte, North Carolina;
 
 
 5
 3. He arrived in Raleigh, North Carolina, on or about December 6, 1974;
 
 
 6
 4. During the entire two and a half month period, he was not allowed to change his clothes or shower; he was not given any washroom items or toiletries such as toothpaste; and he was not given any medical items or medical care; as a result he developed a severe skin disease, mental depression, abnormal emotional behavior, and severe emotional distress;
 
 
 7
 5. While in a jail cell in Kansas City, Missouri, he requested to be removed from a large holding cell because other prisoners had threatened his life; he was not moved, and later that evening he was beaten and sexually molested by several prisoners;
 
 
 8
 6. In Lexington, Kentucky, he was placed in an isolation cell that had cracks in its walls which allowed the temperature in his cell to reach near freezing during that night; and
 
 
 9
 7. During the entire period, he was denied access to a telephone.
 
 
 10
 Jurisdiction was alleged to exist under 28 U.S.C. §§ 1343, 1346(b), 1331, 2201 and 2202. Appellant sought a declaratory judgment that the acts, practices and omissions alleged in the complaint were unconstitutional and in violation of federal law. Appellant also sought compensatory damages in the sum of two million dollars, punitive damages in the sum of one million dollars, appointment of counsel, and an award of costs and attorney's fees.
 
 
 11
 The defendants Civiletti, Wayne, and O'Brien moved for a dismissal of the complaint, stating that the court lacked subject matter jurisdiction. The basis of this contention was that the defendants were federal employees and appellant's claims under 42 U.S.C. § 1983 only applied to individuals who were acting under color of state law.
 
 
 12
 The district court dismissed the appellant's § 1983 and § 1985 claims, finding that the named defendants were all federal officers, and no facts were alleged that they were acting under color of state law.
 
 
 13
 The claims under the Federal Tort Claims Act were dismissed as the court found that on the face of the complaint, it did not appear that the claim had been initially presented to a federal agency as required by law. The district court then dismissed the complaint in its entirety without explanation, and entered judgment dismissing the action.
 
 II. DISCUSSION
 A. Motion to Dismiss
 
 14
 In considering a motion to dismiss, the general rule is that a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); California ex rel. Younger v. Mead, 618 F.2d 618, 620 (9th Cir.1980); Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 429 (9th Cir.1978). In evaluating a complaint, any doubts should be construed in favor of the pleader. Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834-835 (9th Cir.1980); Amfac Mortgage Corp., 583 F.2d at 430.
 
 
 15
 While the above-stated general rules apply equally as well to civil rights complaints brought by pro se plaintiffs, such pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. See, Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Such plaintiffs should be given "an opportunity to amend (their) complaint(s) to overcome any deficiency unless 'it clearly appears . . . that the deficiency cannot be overcome by amendment.' " Stanger v. City of Santa Cruz, slip op. 2470 (9th Cir. March 24, 1980), citing Potter v. McCall, 433 F.2d 1087, 1088 (9th Cir.1970).
 
 
 16
 B. The Attorney General of the United States and the United States
 
 
 17
 Appellant has conceded, on appeal, that no cause of action was stated against the Attorney General as to any of the claims. Therefore, the district court's dismissal of the complaint against the Attorney General is affirmed.
 
 
 18
 As to the United States, appellant, on appeal, has conceded that no cause of action was alleged except for the claims under the Federal Tort Claims Act (FTCA).
 
 
 19
 The district court dismissed the FTCA claims because on the face of the complaint, it appeared that the appellant had failed to present the claim to a federal agency as required by 28 U.S.C. § 2675. The district court did not consider whether causes of action were stated under the FTCA.
 
 
 20
 The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, Caton v. United States, 495 F.2d 635 (9th Cir.1974), and, as such, should be affirmatively alleged in the complaint. A district court may dismiss a complaint for failure to allege this jurisdictional prerequisite. Martin v. United States, 436 F.Supp. 535 (S.D.Cal.1977). However, the pleader should be given an opportunity to file an amended complaint to attempt to cure such pleading defects. See, Id., 436 F.Supp. at 538.
 
 
 21
 In the present case, appellant failed to allege that he had timely filed an administrative claim; thus the district court's dismissal of the claim was appropriate. However, in dismissing the claim, the court also entered judgment which precluded the appellant from possibly curing the defect in the pleading. We, therefore, remand as to the FTCA claims to allow appellant to file an amended complaint. If the district court finds the jurisdictional defects to have been cured, the court should then determine whether causes of action were stated under the FTCA.
 
 C. United States Marshals Wayne and O'Brien
 
 22
 The district court ruled that 42 U.S.C. § 1983 and § 1985 applied only to individuals who acted under color of state law. Upon finding that the complaint did not allege facts which showed that the United States Marshals Wayne and O'Brien had acted under color of state law, the district court dismissed the § 1983 and § 1985 claims against Wayne and O'Brien. The court also dismissed all the other claims without discussion.
 
 1. § 1983 and § 1985
 
 23
 Appellant agrees that Wayne and O'Brien had not acted under color of state law and that, therefore, the dismissal of the § 1983 claims was proper. However, appellant contends that § 1985 does not require action under the color of state law and thus the district court erred in dismissing those claims.
 
 
 24
 Appellant's argument is well-founded. Although both § 1983 and § 1985 are civil rights statutes, they have different origins. Section 1983 is based upon the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color of state law. Tongol v. Usery, 601 F.2d 1091, 1097 (9th Cir.1979); Bowers v. Campbell, 505 F.2d 1155, 1158 (9th Cir.1974). Section 1985, on the other hand, is derived from the thirteenth amendment and covers all deprivations of equal protection of the laws and equal privileges and immunities under the laws, regardless of its source. See, Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (private acts cognizable under § 1985(3)); Williams v. Wright, 432 F.Supp. 732 (D.Or.1976) (acts of federal officers can violate § 1985).
 
 
 25
 To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. Griffin v. Breckenridge, 403 U.S. at 102-103, 91 S.Ct. at 1798.
 
 
 26
 After reviewing appellant's complaint, we cannot say that it satisfactorily pleads a § 1985(3) claim. There is no allegation of a conspiracy or that there was a racially or class-based, invidiously discriminatory animus behind the actions which he alleges took place. However, his allegations that he was denied medical and health needs at ten different holding facilities, and that he was a black prisoner do indicate that the deficiencies in the pleadings could possibly be overcome by amendments to the complaint. Therefore, the dismissal of the § 1985(3) claims against Wayne and O'Brien is reversed and we remand to give appellant an opportunity to attempt to amend his complaint. Stanger v. City of Santa Cruz, --- F.2d ----.
 
 2. Bivens-Type Actions
 
 27
 The appellant also alleged that his first, fifth, and eighth amendment rights[2] were violated by the actions of Wayne and O'Brien, and he sought direct recovery under those constitutional provisions. The district court did not address these Bivens -type claims in its order of dismissal. We thus assume that the court believed that Bivens -type actions could not be maintained under those Amendments, or that if such claims could be made, the appellant had failed to state his causes of action.
 
 
 28
 The United States Supreme Court recently had an opportunity to consider a Bivens-type action in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In Carlson, the Supreme Court established that a violation of the Eighth Amendment proscription against cruel and unusual punishment could be the basis for a Bivens-type action. More importantly, the Supreme Court also set forth a more specific framework in which to determine whether claims to damages against federal officials may be maintained directly under constitutional provisions. The Supreme Court stated that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right" unless the defendant (1) demonstrates " 'special factors counselling hesitation in the absence of affirmative action by Congress' " (citations omitted), or (2) shows "that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." (citations omitted) Id., 446 U.S. at 18, 100 S.Ct. at 1472, 64 L.Ed.2d at 23.
 
 
 29
 The Supreme Court's application of the guidelines to the circumstances in Carlson appears to be equally appropriate in the present case. First, as in Carlson, there do not appear to be any special factors counselling hesitation in the absence of affirmative action by Congress. United States Marshals "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be appropriate. (citations omitted) Moreover, even if requiring them to defend (appellant's) suit might inhibit their efforts to perform their official duties, qualified immunity accorded them . . . provides adequate protection. (citations omitted)" Id., 446 U.S. at 19, 100 S.Ct. at 1472, 64 L.Ed.2d at 24. Second, as in Carlson, there does not appear to be any Congressional declaration that would preempt a Bivens -type action or create an equally effective remedy for constitutional violations of the first, fifth or eighth amendments.
 
 
 30
 Appellant's complaint alleges that the defendants (1) deliberately denied him health and medical needs during the entire two and a half month period; (2) failed to provide him adequate protection from beatings and sexual attacks in the Jackson County City Jail in Kansas City, Missouri; (3) allowed him to be placed in an isolation cell in Lexington, Kentucky, in which temperatures reached near freezing during the night; and (4) denied him access to a phone during the entire two and a half month period, and thus denied him a means to obtain assistance from the courts or an attorney. We believe these allegations, if proven, could provide bases for relief on at least some of the alleged constitutional violations.[3] Therefore, we reverse and remand as to appellant's Bivens -type claims.
 
 D. John Doe Defendants
 
 31
 As a general rule, the use of "John Doe" to identify a defendant is not favored. See, Wiltsie v. California Department of Corrections, 406 F.2d 515, 518 (9th Cir.1968). However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir.1978), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); see, Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430-431 n.24 (9th Cir.1977); also, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13, 98 S.Ct. 2380, 2390 n.13, 57 L.Ed.2d 253 (1978).
 
 
 32
 Here, after filing the complaint, the appellant filed interrogatories requesting from the named defendants the names and addresses of the superintendents in charge of the holding facilities in which he was incarcerated during the two and a half month extradition; and the names and addresses of all the United States Marshals involved during the extradition.[4] The district court, however, dismissed the complaint without requiring a reply to the interrogatories.
 
 
 33
 The district court abused its discretion in not permitting the discovery sought by the appellant and the court's subsequent dismissal of the complaint was error. It was very likely that the answers to the interrogatories would have disclosed the identities of the "John Doe" defendants. With those disclosures, the allegations contained in appellant's complaint, if proven, could possibly have provided bases for relief on appellant's Bivens -type actions against the unnamed United States Marshals and the unnamed federal superintendents and guards; § 1985(3) claims against the unnamed United States Marshals and the unnamed superintendents and guards; and § 1983 claims against the unnamed local superintendents and guards. Therefore, the complaint as to the "John Doe" defendants is remanded to give the appellant an opportunity through discovery to uncover the identities of the "John Doe" defendants and proceed with his claims.
 
 III. CONCLUSION
 
 34
 The dismissal of the complaint is AFFIRMED in part and REVERSED and REMANDED in part.
 
 
 
 *
 The substitution of Attorney General Benjamin R. Civiletti for former Attorney General Edward Levi is effected by Rule 43(c) of the Federal Rules of Appellate Procedure
 
 
 **
 The Honorable William Matthew Byrne, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Appellant described the unnamed defendants as "John Doe" Superintendents # 1-10 who were employed as superintendents of the federal, state, and local holding facilities in which he was held; "John Doe" Marshals # 11-20 who were employed as United States Marshals at cities presently unknown to the plaintiff; and "John Doe" Guards # 21-100 who were employed as guards at each of the holding facilities in which he was held
 
 
 [2]
 Appellant also alleged violations to his Sixth Amendment right, presumably, the right to trial and right to counsel. However, it is clear from his complaint that he was referring to his right of access to the courts, which is covered under the Due Process Clause. Therefore, the Sixth Amendment claim is inappropriate
 
 
 [3]
 See, Carlson v. Green and Estelle v. Gamble, 429 U.S. 97, 104-105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (failure to provide for the health and medical needs of a prisoner could constitute cruel and unusual punishment under the eighth amendment); Fife v. Crist, 380 F.Supp. 901, 908 (D.Mont.1974) (confining prisoner to cell in which temperatures were allowed to reach extremely low levels might be eighth amendment violation); Cline v. Herman, 601 F.2d 374 (8th Cir.1979) (failure to provide adequate security from beatings and sexual attacks by other prisoners could violate cruel and unusual punishment proscription); Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) ("due process of law has a corollary that prisoners be afforded access to courts in order . . . to seek redress for violations of their constitutional rights"); and Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (private cause of action could be maintained under Bivens for violations of fifth amendment Due Process Clause)
 
 
 [4]
 Appellant did not request the names of the John Doe guards in his interrogatories. Presumably, their names would be ascertained after the superintendents were identified