**Dennis W. BECKER, Plaintiff,**

v.

**State of OREGON, ODOC,
et al., Defendants.**

**No. 97CV919.**

United States District Court,
D. Oregon.

July 26, 2001.

Dennis W. Becker, Beaverton, OR, Pro se.

Jan Peter Londahl, Department of Justice Administration, Salem, OR, for Plaintiffs.

## ORDER

HOGAN, District Judge.

Plaintiff is a former inmate at the Oregon State Correctional Institution (OSCI). Following several amended complaints and dispositive motions, the following claims remain: Eighth Amendment violation pursuant to 42 U.S.C.1983, and Title II of Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims, based on defendants' alleged failure to provide accessible showers to plaintiff, a below-the-knee amputee, while he was housed in the disciplinary segregation unit (DSU) at OSCI. *See* third amended complaint, # 89; order limiting claims, # 95; order granting in part and denying in part defendants' motion for summary judgment, # 142.

Now before the court is defendants' motion to dismiss (# 190).

### I. *Summary of Arguments*

Defendants argue that: (1) the state entity defendants are immune from suit under the ADA and RA; (2) the individual defendants are not subject to suit under the RA or Title II of the ADA; (3) defendants may not be sued as individuals in their official capacities under 42 U.S.C. § 1983; (4) the section 1983 claims alleged against the specifically named individual defendants should be dismissed for failure to state a claim; (5) the section 1983 claims alleged against the Doe defendants should be dismissed; and (6) the section 1983 claims are precluded by the ADA or RA.

### II. *Standard of Review*

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will only be granted if it appears

**1064**

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir.1995). The review is based on the contents of the complaint and all allegations of material fact are taken as true and viewed in the light most favorable to the nonmoving party. *See Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992).

A pro se plaintiff's pleadings are held to less stringent standards than formal pleadings drafted by lawyers. *Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir.1980). Pro se plaintiffs should be given an opportunity to amend their complaints to overcome any deficiencies, unless it clearly appears that the deficiencies cannot be overcome by amendment. *Id.*

III. *Discussion*

A. Whether defendants State of Oregon, Oregon Department of Corrections, and Oregon State Correctional Institution are immune from suit brought under the *Americans with Disabilities Act and Rehabilitation Act*

■ The issue before the court is whether states are immune from suits brought under Title II of the ADA and RA. As an initial matter, the court notes that the Supreme Court's recent decision in *Board of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), is not controlling here. Although the Supreme Court

determined in *Garrett* that Congress did not validly abrogate immunity under Title I (employment) of the ADA, it expressly refrained from deciding the issue under Title II (public services). *Id.* 121 S.Ct. at 960 n. 1 ("We are not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment."). Indeed, although not relied upon for precedential value, in an unpublished opinion, *Wroncy v. Oregon Dept. of Transp.,* 2001 WL 474550, 9 Fed.Appx. 604 (9th Cir.2001) (unpubl.), the Ninth Circuit held that *Garrett* "does not compel us to reconsider" Title II's abrogation of states' immunity, noting that "*Garrett* addressed only whether state employees are prohibited from collecting money damages against state employers for violations of Title I of the ADA. The Court, in fact, expressly declined to reach the constitutionality of ADA's Title II." *Id.* (citing *Dare v. California,* 191 F.3d 1167 (9th Cir.1999) and *Clark v. California* 123 F.3d 1267 (9th Cir.1997)). Accordingly, this court is bound to follow the guidance in *Dare, supra,* and *Clark, supra,* holding that Title II of the ADA validly abrogates states' immunity.[1]

■ As will be explained below, the court finds that the state defendants are not immune to suits brought under Title II of the ADA and the RA because Congress effectively abrogated the state's Eleventh Amendment immunity. *See Dare, supra;* and *Clark, supra.*

1. In addition, the district court for the District of Hawaii, in *Patricia N. v. Lemahieu,* 141 F.Supp.2d 1243 (D.Hawai'i, May 29, 2001), held that *Garrett's* holding that Congress did not validly abrogate state immunity under Title I does not extend to Title II. At least one federal district court within another circuit since *Garrett* disagrees, finding that *Garrett's*

holding extends to Title II. *See, e.g., Mincewicz v. Parker,* 2001 WL 256162 (D.Conn., Feb.26, 2001) (extending *Garrett* to Title II, without analysis). The Ninth Circuit appears to be the only federal circuit court of appeals to have decided the issue of whether *Garrett* extends to Title II. *See Wroncy, supra.*

Congress may abrogate a state's Eleventh Amendment immunity to suits in federal court if: (1) Congress states unequivocally that it intends to abrogate the states' immunity, and (2) abrogation is pursuant to a valid exercise of Congress's power. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)).

When enacting the ADA, Congress unequivocally stated its intent to abrogate the states' Eleventh Amendment immunity. "A State shall not be immune under the Eleventh Amendment to the Constitution on the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202.

Likewise, when enacting the RA, Congress unequivocally stated its intent to abrogate the states' Eleventh Amendment immunity. "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d–7(a)(1).

Congress exercised its power to abrogate the states' Eleventh Amendment rights under Section 5 of the Fourteenth Amendment and the Commerce Clause. "It is the purpose of this chapter to invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4). Because Congress may not use its Commerce Clause powers to abrogate a states' immunity from suit, *see Seminole Tribe,* 517 U.S. at 59–67, 116 S.Ct. 1114, the court must determine whether the other Constitutional authority cited for

the ADA, the Fourteenth Amendment, validly abrogates immunity.

To abrogate the states' Eleventh Amendment immunity with Section 5 of the Fourteenth Amendment, Title II of the ADA and the RA must satisfy the "congruence and proportionality" test. *See City of Boerne v. Flores,* 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). To satisfy congruence, an act must be passed with the intention of remedying an evil or wrong, using historical experience as a reference point. *Id.* at 532, 117 S.Ct. 2157. To satisfy proportionality, the act must be proportional to the remedial or preventative goal. *Id.*

With regard to the ADA, Congress expressly found:

> [I]ndividuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7).

Similarly, with regard to the RA, Congress found that "individuals with disabilities continually encounter various forms of discrimination in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and public services." 29 U.S.C. § 701(a)(5).

Thus, Congress passed the ADA and the RA with the intention of remedying an evil or wrong. *See Dare* 191 F.3d at 1174; *Clark* 123 F.3d at 1267. Based on this intention, Title II of the ADA and the RA

are congruent with the equal protection clause of the Fourteenth Amendment. *See Dare, supra; Clark, supra.*

To make an act proportional to the remedial or preventative goal, Congress "must tailor its legislative scheme to remedying or preventing such conduct." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 666, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999). "Congress's findings were sufficiently extensive and related to the ADA's provisions that the provisions can be understood as responsive to or designed to prevent, unconstitutional behavior." *Dare,* 191 F.3d at 1175 (quoting *Florida Prepaid,* 527 U.S. at 646, 119 S.Ct. 2199). Further, the Ninth Circuit has determined that "neither [the ADA or RA] provides remedies so sweeping that they exceed the harms that they are designed to redress." *Clark,* 123 F.3d at 1270. Remedies for Title II of the ADA and the RA are in proportion to, and responsive to prevent unconstitutional behavior and, therefore, a valid exercise of Congress' Fourteenth Amendment power to abrogate the states' Eleventh Amendment immunity from suit. Congress met the requirements of the congruence and proportionality test. The state defendants are, therefore, not immune to suit under the Eleventh Amendment. The motion to dismiss on this basis is denied.

B. Whether individual defendants are subject to suit under *Title II of the ADA or Section 504 of the RA*

Defendants move to dismiss the ADA and RA claims as against the individual defendants, arguing that neither the ADA nor RA provide a cause of action against individual defendants.

1. *Individual liability under the ADA*

 Title II (Public Services) of the ADA provides that "[n]o qualified individu-

al with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A potential defendant under the statute is any "public entity" which includes, among others, "any State or local government"; and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131.

Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also, e.g., Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir.2000) ("[A]s a rule there is no personal liability under Title II...."); *Thomas v. Nakatani,* 128 F.Supp.2d 684 (D.Hawai'i 2000) (no individual capacity suit under Title II); *Campos v. San Francisco State Univ.,* 1999 WL 1201809 (N.D.Cal.1998) (dismissing individual capacity Title II claims).

The ADA claim against defendants in their individual capacities is dismissed; the claim remains against defendants in their official capacities.

2. *Individual liability under the RA*

 The RA provides, in relevant part:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or ac-

tivity receiving Federal financial assistance....

29 U.S.C. § 794(a).

"Program or activity" is defined as all of the operations of:

(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government; [or]

(2) ... (B) a local educational agency ...., system of vocational education, or other school system.

29 U.S.C. § 794.

The overwhelming majority of reported cases addressing this issue, including cases from this district, have held that because individuals do not "receive financial assistance for purposes of the Rehabilitation Act," there is no individual liability under the RA. *Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 120 (7th Cir.1997); *see, e.g., Lollar v. Baker*, 196 F.3d 603 (5th Cir.1999); *Smith v. Maine School Admin. Dist. No. 6*, 2001 WL 68305, *3 (D.Me. Jan. 29, 2001) ("The majority of courts that have addressed the issue have held that neither the Rehabilitation Act nor the ADA permits claims against persons in their individual capacities."); *Baublitz v. California*, 1998 WL 427444, *1 (N.D.Cal. 1998); *Hickman v. Lane County*, 01–6025–HO (Order dated May 10, 2001, dismissing individual capacity ADA and RA claims).

The RA claim against defendants in their individual capacities is dismissed; the RA claim against defendants in their official capacities remain.

C. *Whether defendants may be sued as individuals acting in their official capacities under 42 U.S.C. § 1983*

■ Defendants argue that plaintiff may not maintain a suit against the individual defendants, in their official capacities, under section 1983.

The caption of the third amended complaint (# 89) indicates that the individual defendants are sued in both their individual and official capacities. The prayer for relief seeks declaratory relief and monetary damages.

To the extent the complaint seeks monetary relief under section 1983 against the individual defendants in their official capacities, this claim is dismissed because suing the individual defendants in their official capacities for money damages is "no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (state officials sued for monetary relief in their official capacities are not "persons" under section 1983).

■ Whether plaintiff's section 1983 request for declaratory relief against defendants in their official capacities survives Eleventh Amendment scrutiny is less clear. *Native Village of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 552 (9th Cir.1991). Plaintiff is no longer incarcerated and seeks a declaration that defendants past actions and failures to act violated plaintiff's constitutional rights. *See* third amended complaint, # 89, ¶ 114. "[D]eclaratory relief is impermissible where such relief would 'have much the same effect as a full-fledged award of damages or restitution by the federal court....'" *Id.* (quoting *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 88

L.Ed.2d 371 (1985)). Unlike in *Native Village* where there was a continuing violation, here, the court views no purpose for the declaratory relief claim against the individual defendants in their official capacities other than for res judicata in a potential subsequent state court action for retroactive damages or restitution. *Id.*; *cf. Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir.1997) (*Ex parte Young* exception to Eleventh Amendment applies if seeking to "enjoin an ongoing violation of federal law"). This type of relief is forbidden by the Eleventh Amendment. *See Native Village*, 944 F.2d at 552.

All section 1983 claims against defendants in their official capacities are dismissed. The section 1983 claims for relief remain with respect to defendants' individual capacities. *Id.*

D. *Whether section 1983 claims against defendants Cook Armenakis, Goldade, Hess, Palmateer, and Ingle should be dismissed*

■ Defendants further argue that the section 1983 claims should be dismissed as against defendants Cook, Armenakis, Goldade, Hess, Palmateer, and Ingle because the complaint fails to state a cognizable claim against them.

Defendants acknowledge that the complaint alleges: (1) plaintiff was placed in OSCI's unit 13 after being transferred to OSCI, and that this unit had handicapped accessible showers; (2) defendants Armenakis, Goldade, and Hess were responsible for causing him to be placed in DSU for a disciplinary violation, and that DSU did not have handicapped accessible showers; and (3) defendants Cook, Armenakis, Goldade, Hess, and Palmateer knew or should have known that DSU did not have handicapped accessible showers, and therefore, allowing him to be placed in DSU violated his Eighth Amendment, ADA, and RA rights.

Defendants argue, however, that the complaint is deficient because it does not allege that these defendants prevented plaintiff from using showers that were handicapped accessible in a different unit. Such an allegation is not required for pleading purposes.

Rather, in light of this court's duty to liberally construe the complaint, along with the Ninth Circuit's prior reversal of this court's dismissal order, *see Becker v. Goldade*, 164 F.3d 629 (9th Cir.1998) (unpubl.), the court finds that the complaint adequately alleges a section 1983 claim against defendants Cook, Armenakis, Goldade, Hess, and Palmateer, in their individual capacities. Defendants' citation to *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.1977), and *Rizzo v. Goode*, 423 U.S. 362, 375, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (requiring "causal link" between defendants and alleged constitutional deprivation), is unpersuasive. The Ninth Circuit, in reviewing a prior version of the complaint in this action, found that the complaint "adequately alleges a causal connection between named defendants and the conduct complained of." *Becker*, 164 F.3d 629. The section 1983 claim against defendants Cook, Armenakis, Goldade, Hess, and Palmateer in their individual capacities remain.

In contrast, even liberally construing the complaint, the allegations against defendant Ingle, OSCI's designated chief medical officer, appear related only to the claims which were previously dismissed by this court. *See* order limiting claims, # 95. Accordingly, all claims against defendant Ingle are dismissed.

E. *Whether section 1983 claims against Doe defendants should be dismissed*

■ Defendants move to dismiss claims against the Doe defendants because plain-

tiff has had sufficient time to identify the Doe defendants and file against them specifically. The complaint alleges Doe defendants as corrections officers in Unit 5, a safety/sanitation officer, the OSCI program manager, and shift commanders. *See* third amended complaint, # 89, ¶¶ 12–15. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). Where the identity of alleged defendants will not be known prior to the filing of a complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.* (citations omitted).

Here, unlike in *Gillespie*, plaintiff has been given ample opportunity through discovery to identify the unknown defendants. The original complaint was filed over four years ago, and the third amended complaint was filed over two years later, in September 1999. Pursuant to plaintiff's multiple discovery motions, the parties were allowed over three years to complete discovery. *See, e.g.,* order granting plaintiff's motion to extend discovery deadline, dated July 26, 2000, # 153. Moreover, even if dismissal of Doe defendants was not appropriate due to the extensive opportunity plaintiff has been given to obtain their identities, dismissal of the Doe defendants is appropriate because the complaint fails to state a cognizable claim against them. Unlike the specific allegations against other individual defendants, the complaint fails to contain allegations against the Doe defendants which would provide the necessary causal link between them and plaintiff's alleged deprivations. Defendants' motion to dismiss the Doe defendants is granted.

### F. Whether section 1983 claim is cognizable if based on alleged ADA and RA violations

Defendants argue that plaintiff's section 1983 claim is foreclosed because it is based on the same factual allegations as those in the ADA and RA claims, namely an alleged failure to provide plaintiff with handicap accessible showers.

Both Title II of the ADA and the RA provided that no qualified individual with a disability shall "by reason of his or her disability" be excluded from participation or benefits, or be subjected to discrimination. *See* 42 U.S.C. § 12132(ADA); 29 U.S.C. § 794(a)(RA).

42 U.S.C. § 1983 provides a remedy for violations of rights secured by the Constitution or federal statutes, where such violations were committed under color of state law. 42 U.S.C. § 1983.

A section 1983 claim may be predicated solely on a violation of a federal statute, *see Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), except for in two situations. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Of potential relevance here, "a section 1983 claim, based solely on a violation of a federal statute, does not lie where Congress has foreclosed a section 1983 remedy through a sufficiently comprehensive remedial and enforcement apparatus in the underlying federal statute." *Smith v. Barton*, 914 F.2d 1330, 1333–34 ((9th Cir.1990) (citing *Middlesex*, 453 U.S. at 19–20, 101 S.Ct. 2615)).

As explained by the Ninth Circuit in *Smith, supra*, "the doctrine of *Middlesex* only bars section 1983 claims that could have been brought under a separate federal statute which provides remedial devices sufficiently comprehensive to demonstrate a congressional intent to preclude section

1983 claims." *Smith,* 914 F.2d at 1334. Here, although the factual allegations making up the ADA/RA and section 1983 claims are similar, the section 1983 claim is not dependent on a violation of the ADA or RA. Rather, as in *Smith,* "plaintiff['s] 1983 claim[ ][is] not predicated on violations of a federal statute at all, but on alleged violations of [his] rights under the [Eighth] Amendment." *Smith,* 914 F.2d at 1334 (claims under First Amendment). The section 1983 claim requires plaintiff to prove that he was incarcerated in conditions that posed a substantial risk of serious harm, and that the conduct was perpetrated with deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Frost v. Agnos,* 152 F.3d 1124, 1129 (9th Cir.1998). This claim does not necessarily raise handicap discrimination issues. *See Smith,* 914 F.2d at 1335 (distinguishing *Tyus v. Ohio Dept. of Youth Serv.,* 606 F.Supp. 239 (S.D.Ohio 1985)). In contrast, the ADA and RA claims require plaintiff to prove that he was discriminated against because of his disability. *See* order granting in part and denying in part defendants' motion for summary judgment, # 142.

Moreover, it is not clear that the ADA or RA contains "a remedial structure sufficiently comprehensive to evince congressional intent to preclude 1983 claims based on" the Eighth Amendment's cruel and unusual punishment provision. *Smith,* 914 F.2d at 1335. "A court 'is not lightly to conclude that Congress intended to preclude reliance on section 1983 as a remedy for the deprivation of a federally secured right.' " *Independent Housing Servs. of San Francisco v. Fillmore Center Assoc.,* 840 F.Supp. 1328, 1345 (N.D.Cal.1993) (holding that ADA does not preclude section 1983 action) (quoting *Madsen v. Boise State Univ.,* 976 F.2d 1219, 1225 (9th Cir. 1992) (Norris, J. dissenting)). As in *Smith,* the rights plaintiff seeks to vindi-cate in the section 1983 claim were not created by the ADA or RA, but rather by the Constitution, here, the Eighth Amendment. *Smith,* 914 F.2d at 1335.

Defendants' motion to dismiss plaintiff's section 1983 claim as precluded by the ADA or RA is denied.

### IV. *Conclusion*

For the foregoing reasons, defendants' motion to dismiss (# 190) is granted in part and denied in part as stated above. The following claims remain: ADA and RA claims against the state entity defendants and individuals in their official capacities; and section 1983 claims against individual defendants Cook, Armenakis, Goldade, Hess, and Palmateer, in their individual capacities.