**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2531
_____

MICHAEL RIVERA,

Appellant

v.

KEVIN MONKO; WYNSTON GILBERT;
JOHN DOE


Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-19-cv-00976)
District Judge: Honorable Susan E. Schwab


Argued on April 30, 2021

Before: PHIPPS, NYGAARD and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 15, 2022)

Devi Rao                    [**ARGUED**]
Roderick & Solange MacArthur Justice Center
501 H Street, NE
Suite 275
Washington, DC 20002

                    Counsel for Appellant


Michael J. Scarinci            [**ARGUED**]
Office of Attorney General of Pennsylvania
Strawberry Square
15th Floor
Harrisburg, PA 17120

                    Counsel for Appellee

_____

OPINION OF THE COURT

_____


**ROTH**, <u>Circuit Judge</u>:

Prisoners have a well-settled constitutional right to access the courts to challenge their convictions and conditions of confinement. But how far does that right extend? Does it follow litigants to the courthouse door, only to retreat as soon as their complaints have been filed? Or does it reach into the courtroom as those complaints are adjudicated? Michael Rivera argues that, at the time of his civil rights trial, he had a

clearly established right to access the courts at all stages of litigation. He appeals the District Court's order dismissing his complaint against two corrections officers and a prison law librarian who, he alleges, completely deprived him of the ability to research evidentiary and court rules ahead of and during his trial. He contends that, as a result, he lost a potentially meritorious claim.

The District Court found that the defendants were entitled to qualified immunity because, at the time of the alleged violation, a prisoner had no clearly established right to access legal materials at the trial stage of a civil rights case.

Precedent forces us to agree with the District Court: existing Supreme Court and Third Circuit Court of Appeals law had not clearly established a prisoner's right to access the courts after he or she filed a complaint. Going forward, however, there should be no doubt that such a right exists. The ability of a prisoner to access basic legal materials in a law library, such as the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the rules of the court in which the prisoner is litigating, does not stop once a prisoner has taken the first step towards the courthouse's door. Prisoners need to continue to have a right to access the courts after they file their complaints; otherwise, the right is illusory. Under the facts alleged here, the defendants violated this right, even though they may not have been aware at the time that they did so. Thus, while qualified immunity bars Rivera's claim in this case, it would not bar similarly situated prisoners' claims in the future.

**A. Background**

Rivera is an inmate at SCI-Fayette. He was temporarily transferred to SCI-Retreat in July 2017 in order to represent himself in a trial challenging his conditions of confinement.[1] He was assigned to the Restricted Housing Unit (RHU) from which inmates may access a satellite "mini law library." Rivera's trial was scheduled to begin on a Monday. On Friday, he submitted a request slip to Lieutenant Monko, seeking access to the mini law library. Lieutenant Monko stated that Rivera could visit the library sometime that day and approved his request for continuing access to the library throughout his trial.

That evening, Sergeant Gilbert escorted Rivera to the mini law library. The library did not contain any physical books, only two computers. Both were inoperable. Sergeant Gilbert told Rivera that he would "get with Lieutenant Monko and the Law Librarian on Monday and try to get the computer fixed."[2] He never did. The computers remained inoperable during Rivera's entire stay at SCI-Retreat. As a result, Rivera had no way to access the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the court rules.

Rivera then asked Sergeant Gilbert whether he could borrow paper copies of the rules from the main law library since he could not use the computers in the mini law library. His request was denied because "the Law Librarian said no."[3] Rivera requested access to hard copies again, after his trial had

---

[1] *See Rivera v. O'Haire*, No. 1:15-cv-1659 (M.D. Pa. 2017).
[2] JA 37 (Am. Compl. ¶ 20).
[3] JA 38 (Am. Compl. ¶ 22).

4

started, and was again refused.

Rivera alleges that this complete lack of access to legal materials hindered his ability to represent himself at trial. He claims that when he testified at trial, he did not know he needed to provide foundational testimony about the unsworn declaration and medical records he planned to introduce as exhibits. The judge refused to admit his evidence on hearsay grounds. The jury entered a verdict in favor of the defendants. According to Rivera, access to the Federal Rules of Evidence would have assisted him in being able to get his evidence admitted and likely would have changed the outcome of his trial.

## B. Procedural History

Rivera filed a grievance shortly after the jury verdict, alleging that he was denied access to legal materials at his trial. He exhausted his administrative remedies through the prison grievance process. He then filed a *pro se* action in Pennsylvania state court against Lieutenant Monko, Sergeant Gilbert, and the unnamed law librarian.[4] The law librarian was not served. Lieutenant Monko and Sergeant Gilbert removed the case to United States District Court for the Middle District of Pennsylvania and then moved to dismiss Rivera's complaint, contending that 1) Rivera's complaint did not state a viable access-to-courts claim, and 2) the defendants were entitled to qualified immunity. The District Court[5] awarded

---

[4] *Rivera v. Monko et al*., No. 2019-cv-4215 (Ct. Com. Pl. Luzerne Cty).

[5] The parties agreed to have the motion adjudicated by Magistrate Judge Susan E. Schwab, hereinafter referred to as

qualified immunity to all defendants (including the unserved law librarian), finding that no legal authority clearly established Rivera's right to access his prison's law library at the time of his trial. Rivera appealed.

## II.[6]

Our review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary.[7] We "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[8] Complaints filed by *pro se* litigants, such as Rivera, are liberally construed,[9] but must still "allege sufficient facts . . . to support a claim."[10] We also exercise plenary review over a district court's grant of qualified immunity, which is an issue of law.[11] In qualified immunity cases, we accept the plaintiff's allegations as true and draw all

---

the "District Court."

[6] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

[7] *See McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009) (citation omitted).

[8] *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016), as amended (Sept. 16, 2016) (quotation marks and citation omitted).

[9] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[10] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

[11] *Pro v. Donatucci*, 81 F.3d 1283, 1285 (3d Cir. 1996) (citation omitted).

inferences in his favor,[12] even where, as here, a court decides only whether a right is clearly established and not whether it has been violated.[13]

**III.**

Properly construed under the liberal standard afforded to *pro se* litigants, Rivera's complaint does state an access-to-courts claim. It is also clear from the complaint that Rivera's right to access legal materials before and during his civil rights trial was violated. However, "[t]he standard for qualified immunity is tilted in favor of shielding government actors and . . . protect[s] all but the plainly incompetent or those who knowingly violate the law."[14] Its protection is difficult to break: immunity from liability attaches to government officials except where 1) the plaintiff has alleged facts showing a violation of a constitutional right, *and* 2) at the time of the challenged conduct, the right the defendant violated was clearly established.[15] Only the first condition is met here. A prisoner's right to access the courts beyond the filing of the complaint was not yet clearly established in the Supreme Court or in this Court. It is now established in this Court, going forward.

---

[12] *Torisky v. Schweiker*, 446 F.3d 438, 442 (3d Cir. 2006) (citation omitted).

[13] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

[14] *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (citation omitted).

[15] *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## A. Violation of a Constitutional Right

To state a claim for denial of access to the courts, an inmate must allege both that he was denied "the tools . . . need[ed] . . . in order to challenge the conditions of [his] confinement" and that an actual injury resulted.[16] "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they . . . lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[17]

Rivera in the allegations of his complaint has stated such a claim: He had a potentially meritorious lawsuit concerning his conditions of confinement. He had successfully filed his complaint and survived pretrial proceedings. However, because of his inability both before and at trial to access the Federal Rules of Evidence and the Federal Rules of Civil Procedure, he was not able to introduce important records and statements into evidence. The jury decided against him. He claims that if he had had access to the Federal Rules of Evidence, he would have been able to introduce the reports and statements into evidence and that the jury was likely to have held in his favor. Through the denial of access to the law library materials, his right of access to the courts was terminated before he achieved his remedy.

Because we recognize that a prisoner has a

---

[16] *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

[17] *Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

8

constitutional right of access to the courts in order to file a lawsuit concerning the conditions of his confinement, it is ludicrous to hold that the right of access stops once the complaint has been filed. We know of very few lawyers who could litigate such an action without being able to refer to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. A *pro se* prisoner is much less likely to be able to do so.

The Seventh Circuit Court of Appeals has agreed with this standard holding that "a prisoner's simple ability to file a complaint is not dispositive."[18] "A prisoner states an access-to-courts claim when he alleges that even though he successfully got into court by filing a complaint . . ., his denial of access to legal materials caused a potentially meritorious claim to fail."[19]

It is clear to us that when a prisoner asserts a potentially meritorious conditions of confinement claim, his access to the court must encompass continuing access to copies of court rules and procedures.

The District Court did not address whether Rivera's complaint stated an access-to-courts claim. Instead, the court jumped straight to the "clearly established" prong of the qualified immunity analysis. It was within its discretion to do so.[20] However, we may affirm the District Court's order for any reason supported by the record.[21] Here, there is no

---

[18] *Marshall v. Knight*, 445 F.3d 965, 968-69 (7th Cir. 2006).

[19] *Id.* at 696.

[20] *See Pearson*, 555 U.S. at 243.

[21] *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011)

9

pleading deficiency. Putting aside the question of whether the right that Rivera claims was violated had been clearly established, Rivera otherwise stated all the elements needed for an access-to-courts claim.

### 1. Actual Injury

We will first consider whether Rivera was actually injured by the defendants' conduct because the "actual injury" requirement of the access-to-courts standard implicates a prisoner's standing to bring a claim and thus implicates our jurisdiction.[22] Rivera alleges that the defendants "intentionally" and "totally" denied him access to the Federal Rules of Civil Procedure and the Federal Rules of Evidence before and during his trial, which caused him to lose a meritorious civil rights action because he was not able to successfully introduce evidence necessary to prove his claim.[23] Lieutenant Monko and Sergeant Gilbert argue that Rivera's alleged injury "fall[s] short of stating a viable access-to-courts claim" because it does not describe his underlying civil rights case in compliance with Federal Rule of Civil Procedure 8(a).[24] They cite the Supreme Court's decision in *Christopher v. Harbury*, in which the Court concluded that "the underlying cause of action . . . is an element that must be described in [an access-to-courts] complaint . . . ."[25] The Court did not, however, go that far. It found that plaintiffs alleging denial of access *should* generally comply with Rule 8(a) in describing

---

(citation omitted).

[22] *Kautzky*, 494 F.3d at 680 (citing *Lewis*, 518 U.S. at 349).

[23] JA 38–39 (Am. Compl. ¶¶ 23–25), JA 40 (Am. Compl. ¶ 29).

[24] Monko and Gilbert's Response Brief ("Resp. Br.") 19–20.

[25] 536 U.S. at 415.

10

the underlying claim, but that they *must* only "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and [] describe the 'lost remedy'" in such a way that the defendants are on fair notice of it.[26]

Rivera has met the standard. His pro se complaint identified the name and case number of his civil rights case, *Rivera v. O'Haire*, and alleged that it was a "nonfrivolous legal claim challenging his conditions of confinement."[27] Rivera also alleged multiple times that his inability to research hearsay rules as a result of the defendants' conduct resulted in an adverse verdict in *Rivera v. O'Haire*, and that he has "no plain, adequate, or complete remedy at law to redress the wrongs" described in his complaint.[28] This put the defendants on fair notice of the injury Rivera alleged.[29] *Christopher* requires nothing more.[30]

---

[26] *Monroe*, 536 F.3d at 205–06 (quoting *Christopher*, 536 U.S. at 416–17); *see Erickson*, 551 U.S. at 93.

[27] JA 36 (Am. Compl. ¶¶ 11–12).

[28] JA 39 (Am. Compl. ¶¶ 25–26), 41 (Am. Compl. ¶ 33). Lieutenant Monko and Sergeant Gilbert also argue that Rivera's claim should be denied because he did not "point to any particular hearsay exception" which would have made his evidence admissible or "describe the contents of [the excluded] documents." Resp. Br. 20. We do not require pro se litigants to allege facts so granularly. *See Mala*, 704 F.3d at 699 (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

[29] *See Christopher*, 536 U.S. at 416.

[30] Rivera also alleges that he was denied access to legal materials during an earlier stay at SCI-Retreat in May 2017 and another stay in August 2017. On appeal, he contends that these allegations are less relevant than his allegations regarding the

## 2. Causation

Lieutenant Monko and Sergeant Gilbert also contend that they cannot be held individually liable for Rivera's injury because they did not cause it. They argue that they are "correctional officers, not computer technicians," and that Rivera did not "plead any facts plausibly demonstrating" his assertion that the two officers were "responsible for the upkeep and maintenance of the law library research computers."[31] However, Rivera was not required to do so.

Rivera's contention that Lieutenant Monko and Sergeant Gilbert were responsible for maintaining the law library computers is a factual allegation, not a legal conclusion. At the motion-to-dismiss stage, we accept all plausible non-conclusory factual allegations as true, and then determine whether they are sufficient to support a claim for relief.[32] This is especially true of *pro se* pleadings, which we construe liberally.[33] Here, it is reasonable to infer that Lieutenant Monko and Sergeant Gilbert, who worked on the RHU when Rivera was housed there, escorted him to and from the mini law library, and pledged to ensure the computers would be fixed, were responsible for the computers' upkeep at the time of Rivera's trial—and thus impeded his access to the courts by failing to have the computers repaired. The same is true for the

---

deprivation of access during his trial in July 2017, and we agree. We need not decide whether these allegations allege an actual injury, because his allegations relating to the July 2017 deprivation do.

[31] Resp. Br. 21; JA 39 (Am. Compl. ¶ 27).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[33] *Erickson*, 551 U.S. at 94.

law librarian, who Rivera plausibly alleges "was assigned to maintain and oversee the mini-law library within the RHU at SCI-Retreat."[34]

Whether these defendants were in fact responsible is a fact-bound question to be determined through discovery. Moreover, Rivera plausibly alleged that Sergeant Gilbert and the law librarian's refusal to permit Rivera to access hard copies of the basic federal rules that he requested caused Rivera to be denied access to the courts. Thus, Rivera's complaint does not fail for lack of causation.

## B.   "Clearly Established"

Because we conclude that Rivera's complaint otherwise states a viable access-to-courts claim, we must examine the second prong of the qualified-immunity inquiry: whether the right Rivera alleges the defendants violated was clearly established at the time of his trial. It is important that we first pin down the specific right alleged. We will not define rights

---

[34] JA 35 (Am. Compl. ¶ 9). The District Court found that the law librarian, though unserved, was entitled to qualified immunity because it was "clear from the face of the complaint" that he was shielded from liability for the same reasons as Lieutenant Monko and Sergeant Gilbert. *See Alston v. Parker*, 363 F.3d 229, 234 n.6 (3d Cir. 2004) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."), *abrogated on other grounds by Iqbal*, 556 U.S. at 678; FED. R. CIV. P. 4(m).

13

"at a high level of generality" for clearly established purposes,[35] yet "[i]t is not necessary . . . that 'the very action in question has previously been held unlawful.'"[36]  Instead, the question is whether a "'general constitutional rule already identified in the decisional law' applies with obvious clarity."[37]

Lieutenant Monko and Sergeant Gilbert argue that "properly particularizing . . . the facts of this case, the question is" whether "an inmate who, after his case has been pending for nearly two years, when he is temporarily transferred to another prison closer to the courthouse and placed in segregated housing on the eve of trial, [is entitled to] access to legal materials."[38]  That is far beyond the level of specificity needed to put the officers on notice of possible unlawful actions.[39]  Unlike, for example, certain claims in the Fourth

---

[35] *See Michtavi v. Scism*, 808 F.3d 203, 206 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

[36] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (citation omitted); *see Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 993 (3d Cir. 2014).

[37] *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) (quotation marks and citation omitted).

[38] Resp. Br. 11.

[39] In cases analyzing qualified immunity in the access-to-courts context, courts have generally not defined the right at issue by circumscribing the right to the exact factual contexts of each case, as Lieutenant Monko and Sergeant Gilbert suggest we do here. *See e.g.*, *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995) (discussing the right as a "right of access to the courts . . . [that is] adequate, effective, and meaningful.") (citations and internal quotations omitted); *Al-Amin v. Smith*, 511 F.3d 1317, 1325–26 (11th Cir. 2008) (defining right as right to access

Amendment context,[40] the violation Rivera alleges is clear-cut: he claims that the defendants' actions deprived him of *all* access to the legal materials he needed to try his claim. The right to meaningfully access the courts includes a right to "the tools . . . need[ed] . . . in order to challenge the conditions of . . . confinement."[41] Thus, the right at issue is a prisoner's right to meaningfully access the courts, through access to a law library, before and during his civil rights trial.[42]

---

courts which "requires that incoming legal mail from his attorneys, properly marked as such, may be opened only in the inmate's presence and only to inspect for contraband" rather than a right to have mail opened in the inmate's presence where the mail in question was sent by an attorney the inmate failed to identify to prison guards, which was the exact factual circumstance at issue); *Siggers-El v. Barlow*, 412 F.3d 693, 703–04 (6th Cir. 2005) (defining right as "right to access the courts" and explaining that "an official can still be on notice that his conduct violates established law even in novel factual circumstances.") (citations and internal quotations omitted); *Simkins v. Bruce*, 406 F.3d 1239, 1241–43 (10th Cir. 2005) (defining right as "meaningful right of access to the courts" and holding that "in the context of alleged interference with inmate legal mail that the prisoner's constitutional right of access to the courts is clearly established.") (citations and internal quotations omitted); *Allen v. City & Cty. of Honolulu*, 39 F.3d 936, 938–39 (9th Cir. 1994) (holding that inmate had clearly established right of access to a law library).

[40] *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).

[41] *Lewis*, 518 U.S. at 355.

[42] The District Court articulated the right at issue as the "right to assistance in the form of a law library or other legal

15

We are left with the most difficult question, and the only one the District Court addressed: whether the right at issue was clearly established at the time the defendants allegedly violated it. At the "clearly established" step of the qualified immunity analysis, the question is "whether the officer had fair notice that her conduct was unlawful."[43] Courts judge reasonableness against the backdrop of the law at the time of the conduct.[44] "Although there need not be 'a case directly on point for a right to be clearly established, existing precedent must have placed the . . . constitutional question beyond debate.'"[45] We first look to factually analogous precedent in the Supreme Court and the Third Circuit Court of Appeals[46] to determine whether that body of law clearly establishes the right at issue in such a way that "a reasonable officer would anticipate liability for this conduct."[47] We then consider whether a "robust consensus" of

_____

assistance in presenting a claim at trial in a civil rights case." JA 23. But the Supreme Court found that there is no right to "legal assistance in presenting a claim," but rather a right to present a claim, of which legal assistance or access to legal materials may be a necessary component. *See Lewis*, 518 U.S. at 351. So it is more accurate to define the right in terms of a prisoner's ability to meaningfully access the courts to present his claim, rather than his ability to access "legal assistance."

[43] *El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020) (quotation marks and citation omitted).

[44] *Kedra*, 876 F.3d at 434; *see Kisela*, 138 S. Ct. at 1152.

[45] *El*, 975 F.3d at 334 (quoting *Kisela*, 138 S. Ct. at 1152).

[46] *James v. N.J. St. Police*, 957 F.3d 165, 170 (3d Cir. 2020) (citing *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247–48 (3d Cir. 2016)).

[47] *Kedra*, 876 F.3d at 450.

16

persuasive authority clearly establishes the right.[48]

The District Court granted qualified immunity because the parties did not identify "controlling authority, or a robust consensus of persuasive authority, holding that an inmate's right to affirmative assistance in the form of either a law library or legal assistance extends to the trial stage of a civil rights case."[49]  We agree with the District Court that the right at issue had not been clearly established at the time.  A closer look at Supreme Court and our Court's case law shows that, properly stated, the right the defendants violated was not beyond doubt---although going forward there is no doubt about the right.

### 1. *Bounds v. Smith* **Establishes the Right of Access at All Stages of Litigation**

In *Bounds v. Smith*, the Supreme Court held that it was "established beyond doubt that prisoners have a constitutional right of access to the courts."[50]  Before *Bounds*, the Supreme Court had recognized only a negative right of access to the courts—a right for prisoners to litigate claims without state interference—and had never "extended [the right] . . . to apply further than protecting the ability of an inmate to prepare a petition or complaint."[51]  *Bounds* broadened the right substantially by holding that states must not only avoid

---

[48] *James*, 957 F.3d at 170 (citation omitted).

[49] JA 28.

[50] 430 U.S. 817, 821 (1977).

[51] *Wolff v. McDonnell,* 418 U.S. 539, 576 (1974); *see Johnson v. Avery,* 393 U.S. 483, 490 (1969); *Ex Parte Hull,* 312 U.S. 546, 549 (1941).

interfering with prisoners' access to the courts, but must also "shoulder affirmative obligations to assure all prisoners meaningful access[.]"[52]  Noting that "meaningful access [] is the touchstone,"[53] the Court concluded that "the [] right of access . . . requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing [] adequate law libraries or adequate assistance from persons trained in the law."[54]

The right to access the courts established by the Court in *Bounds* was limited only by the caveat that the right must be exercised in furtherance of "the preparation and filing of meaningful legal papers."[55]  Some courts, including the Third Circuit, interpreted the right as freestanding: invokable by a well-pleaded allegation that a library or legal assistance system was inadequate, without a showing of actual injury.[56]  And— importantly here—the Court did not limit the right of access' mandate of assistance to the filing of *initial* legal papers.[57]

---

[52] 430 U.S. at 824.
[53] *Id*. at 823 (citing *Ross v. Moffitt*, 417 U.S. 600, 611 (1974)).
[54] *Id*. at 828.
[55] *Id.*
[56] *See, e.g.*, *Bieregu v. Reno,* 59 F.3d 1445, 1455–56 (3d Cir. 1995); *Peterkin v. Jeffes*, 855 F.2d 1021, 1041 (3d Cir. 1988) (finding no actual injury required for "cases . . . directly involving prisoners' access to legal knowledge"); *see generally Sowell v. Vose*, 941 F.2d 32, 34 (1st Cir. 1991) (collecting cases).
[57] The Court noted in passing that its "main concern" was protecting the plaintiffs' ability to file civil rights complaints and habeas corpus petitions, 430 U.S. at 828 n.17, but did not find that only that ability is constitutionally protected.

Indeed, the Court acknowledged that "a habeas corpus petition or civil rights complaint need only set forth facts giving rise to the cause of action,"[58] yet found that law books or other forms of legal assistance were still necessary to ensure meaningful access to the courts. A prisoner could state a *Bounds* claim by showing that he was deprived access to legal materials at any time, no matter why or at what stage of a litigation he hoped to use them. We accepted that proposition wholeheartedly, holding in multiple cases that the right to access the courts extended past the initial pleading stage.[59]

## 2. *Lewis v. Casey* **Curtails the Right of Access**

In *Lewis v. Casey*, [60] the Supreme Court restricted the *Bounds* access-to-courts right in two important ways. First, *Lewis* held that "an inmate alleging a violation of *Bounds* must show actual injury" to his right to access the courts, reasoning that *Bounds* did not establish a freestanding right to a prison

---

[58] *Id*. at 825.

[59] *See Abdul-Akbar v. Watson*, 4 F.3d 195, 204 (3d Cir. 1993) (concluding *Bounds* would be met if "the mix of paralegal services, copying services and available research materials" in a prison's satellite library "can provide sufficient information so that a prisoner's claims *or defenses* can be reasonably and adequately presented") (emphasis added); *Peterkin*, 855 F.2d at 1042 (finding "[legal] assistance must be available for all relevant legal proceedings"); *see also Zilich v. Lucht*, 981 F.2d 694, 695–96 (3d Cir. 1992) (concluding plaintiff stated access-to-courts claim by alleging deprivation of legal materials hindered defense in pending court proceedings).

[60] 518 U.S. 343 (1996).

law library or legal assistance program.[61]  Following *Lewis*, a plaintiff alleging an access-to-courts violation based on an inadequate prison law library or legal assistance program must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."[62]   Second, *Lewis* held that only certain types of claims—specifically, direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of his confinement—could support an access-to-courts injury.[63]

The District Court here found that the right to "affirmative [legal] assistance" did not extend past the pleading stage.[64]   Thus, the right Rivera alleges Lieutenant Monko, Sergeant Gilbert, and the law librarian violated was not "beyond debate" at the time of his trial.[65]

---

[61] 518 U.S. at 350–51.

[62] *Id.* at 351.

[63] *Id.* at 355.

[64] *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (overruled on other grounds by *Coleman v. Tollefson*, 575 U.S. 532 (2015)).

[65] The District Court also cited several pre-*Lewis* cases from other Courts of Appeals which involved forms of legal assistance other than law libraries.  Only the Tenth Circuit directly upheld a system that cut off legal assistance after the "initial pleading stage" of a suit.  *Compare Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987), *with Brooks v. Buscher*, 62 F.3d 176, 182 (7th Cir. 1995) (holding that system of "indirect access" through photocopies was adequate despite delays in transmitting materials); *Knop v. Johnson*, 977 F.2d 996, 1006–07 (6th Cir. 1992) (holding that order requiring

We agree. Given the "broad scope" of § 1983 qualified immunity,[66] we must hold that the right Rivera alleges Lieutenant Monko, Sergeant Gilbert, and the law librarian violated was not "beyond debate."

**3. No Clear Consensus Exists Among Persuasive Authority**

Because the right of prisoners to meaningfully access the courts at their civil-rights trials was not clearly established under binding precedent, we must examine persuasive authority to decide whether a robust consensus exists concerning the right of access in analogous circumstances.[67]

---

prison legal assistance staffers to "represent" inmates in "a variety of civil matters" was "more intrusive than necessary"); *cf. Peterkin*, 855 F.2d at 1042*; Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985) ("[F]or access to be meaningful, post-filing needs, such as the research tools necessary to effectively rebut authorities cited by an adversary in responsive pleadings, should be met.") (citation omitted); *Bonner v. Prichard, Ala.*, 661 F.2d 1206, 1212 (11th Cir. 1981) (rejecting argument that right to access courts is limited to preparation of complaints and petitions).

[66] *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (citation omitted).

[67] *See Mammaro v. N.J. Div. of Child Protection & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (holding that "robust consensus" of persuasive authority can clearly establish right if applicable controlling precedent does not exist).

No robust consensus among other Courts of Appeals sways this view. Only two courts since *Lewis* have directly and precedentially addressed the temporal scope of the right of access. As cited earlier, in *Marshall v. Knight*,[68] the Seventh Circuit Court of Appeals held that the right extends past the filing of a complaint. Marshall alleged that officials reduced his law library access to a "non-existent" level and consequently hindered his ability to prepare for a post-conviction evidentiary hearing.[69] The district court found that he failed to state a claim because *Lewis* "only requires that an inmate be given access to the courts to file a complaint or appeal."[70] The Court of Appeals reversed, finding that "a prisoner's simple ability to file a complaint is not dispositive,"[71] and "[a] prisoner states an access-to-courts claim when he alleges that even though he successfully got into court by filing a complaint[,] his denial of access to legal materials caused a potentially meritorious claim to fail."[72] *Marshall* involved an evidentiary hearing rather than a civil rights trial, but the plaintiff's alleged injury otherwise closely resembles Rivera's.

---

[68] 445 F.3d 965 (7th Cir. 2006).

[69] 445 F.3d at 968–69.

[70] *Id.* at 969.

[71] *Id*.

[72] *Id.* The Fourth Circuit adopted *Marshall's* reasoning in a non-precedential opinion. *See Fox v. N. Carolina Prison Legal Servs.*, 751 F. App'x 398, 400 (4th Cir. 2018) (citing *Marshall*; reversing dismissal of access-to-courts claim where plaintiff alleged prison impaired his ability to adequately respond to defendants' filings).

The Ninth Circuit Court of Appeals expressed a different view in *Silva v. Di Vittorio*.[73] *Silva* involved a claim that officials confiscated and destroyed the plaintiff's legal documents in retaliation for pursuing civil rights cases against them. The district court dismissed Silva's access-to-courts claim on the basis that the officials' conduct did not stop him from filing complaints in the civil rights lawsuits.[74] On appeal, Silva "acknowledg[ed] that prison officials have no affirmative duty to help him litigate his claims once they have been filed," but "argu[ed] instead that prisoners have a right . . . to . . . challenge[] . . . the conditions of their confinement . . . without active interference by prison officials."[75] The Court of Appeals reversed, concluding that Silva had stated a claim for denial of access to the courts. In dictum, the court adopted Silva's argument distinguishing between the right to "affirmative assistance" and against "active interference" in access-to-court claims, finding that "*Lewis* . . . limited the right of access to the courts to the pleading stage in cases involving prisoners' affirmative right to assistance,"[76] but that it "does not speak to a prisoner's right to litigate in the federal courts without

---

[73] 658 F.3d 1090 (9th Cir. 2011).

[74] 658 F.3d at 1096–97.

[75] *Id.* at 1097.

[76] 658 F.3d at 1103. *Silva* defined "the pleading stage" as both the filing of the complaint "*and* the preparation of any filings necessary to rebut the State's arguments when a court determines that a rebuttal would be of assistance." *Id.* at 1102 n.9 (quotation marks and citation omitted). But *Lewis* found that the right of access only entitles prisoners to assistance in presenting their factual claims to courts, not in rebutting the State's arguments. *See Lewis*, 518 U.S. at 354.

unreasonable interference."[77]

A two-court circuit split demonstrates that no "robust consensus" exists. Thus, the decisions by other Courts of Appeals does not change our conclusion that no controlling precedent clearly established a prisoner's right to access the courts at all stages of a civil rights case.

Nevertheless, today we recognize that a prisoner has a valid access-to-courts claim when he alleges that the denial of access to legal materials—before and/or during trial—caused a potentially meritorious claim to fail. This aligns us with the Seventh Circuit Court of Appeals' position that *Lewis* does not confine access-to-courts claims to situations where a prisoner has been unable to file a complaint or appeal.[78] Indeed, it would be perverse if the right to access courts faded away after a prisoner successfully got into court by filing a complaint or petition. Once in court, a prisoner's need to access legal materials is just as great—if not greater—than when a prisoner initially filed a complaint. Thus, while qualified immunity unfortunately bars Rivera's claims today, it will not bar such claims in the future.[79]

---

[77] *Silva*, 658 F.3d at 1103.

[78] *Marshall*, 445 F.3d at 969.

[79] Our concurring colleague proposes that only States—not state actors—have a positive duty to assist inmates in accessing the courts, and that state actors have only a negative duty to not interfere with such access. However, state actors may be held liable in their personal capacities for their official-capacity conduct, *see Hafer v. Melo*, 502 U.S. 21, 27 (1991), and the Constitution imposes positive duties on the state—to be done by its actors—to assist those whom it imprisons and restricts

24

from fulfilling their own needs. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (collecting cases); *Lewis*, 518 U.S. at 356 ("[W]e leave it to prison officials to determine how best to ensure that inmates with language problems have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."). Courts routinely enforce those positive duties against state actors in their personal capacities. *See, e.g.*, *Farmer*, 511 U.S. at 830, 848–50; *Palakovic v. Wetzel*, 854 F.3d 209, 224–34, 226 n.20 (3d Cir. 2017); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 585–88 (3d Cir. 2004). Enforcing the duty to ensure that people incarcerated by the state have access to "[t]he tools" they need "to attack their sentences, directly or collaterally" and "to challenge the conditions of their confinement" is no different. *Lewis*, 518 U.S. at 355; *see, e.g.*, *Allah v. Seiverling*, 229 F.3d 220, 224 n.5 (3d Cir. 2000) (holding, without distinguishing between assistance and interference or the duties of States and their actors, that prisoner stated a personal capacity *Lewis* claim against prison officials by alleging that "while he was in administrative segregation he did not have access to trained legal aids and as a result was unable to file a brief in his post-conviction appeal").

And any concerns about Pennsylvania corrections officers' personal financial liability should be allayed by Pennsylvania corrections officers' collective bargaining agreement, under which Pennsylvania must furnish counsel for and indemnify officers in cases like this. Art. 33, § 21(b), (c), https://www.hrm.oa.pa.gov/employee-relations/cba-md/Documents/cba-pscoa-2021-2024.pdf; *see also Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 12 A.3d 346, 350–51 (Pa. 2011) ("[A]ccording to the Chief Counsel,

25

## IV.

For the reasons discussed above, we hold that Lieutenant Monko, Sergeant Gilbert, and the law librarian were entitled to qualified immunity. The District Court's order dismissing Rivera's complaint is affirmed.

---

employees are almost always defended and indemnified in civil cases . . . .").

*Rivera v. Monko*, No. 20-2531
PHIPPS, *Circuit Judge*, concurring in judgment.

The Majority Opinion articulates the right of access to courts more broadly than ever before. As announced today, the right of access imposes a positive duty on prison guards and other employees in their personal capacities to supply law-library materials or their equivalent to inmates. The Majority Opinion recognizes that such a right is not clearly established, and on that basis, it grants qualified immunity to two prison guards who were sued by an inmate for violating that right. While I agree with that outcome, I respectfully disagree with the Majority Opinion's expansion of the right of access.

As classically understood, a right held by one person imposes a correlative legal duty on another. *See Berisha v. Lawson*, 141 S. Ct. 2424, 2426 (2021) (Gorsuch, J., dissenting from the denial of certiorari) (recognizing that most rights come with corresponding duties).[1] Those correlative duties

_____

[1] *See generally* Karl N. Llewellyn, *The Bramble Bush* 88 (2012 ed.) ("A man has a *right* only in regard to another man. . . . *The right is indeed the duty*, a duty seen other end to. The relation is identical; the only difference is in the point of observation." (emphasis in original)); Arthur L. Corbin, *Rights and Duties*, 33 Yale L.J. 501, 502 (1924) ("[A] jural right is a relation existing between two persons when society commands that the second of these two shall conduct himself in a certain way (to act or to forbear) for the benefit of the first. A 'right' exists when its possessor has the aid of some organized governmental society in controlling the conduct of another person. The first is said to have a 'right' against the second and the latter a 'duty' to the first."); Wesley Newcomb Hohfeld, *Some Fundamental*

1

may be positive (to take action) or negative (to refrain from action).[2] Here, the Majority Opinion errs by imposing positive duties on prison guards correlating to an inmate's right of access.

Textually, it is difficult to associate specific duties with the constitutional right of access to courts because the precise source of the right is unsettled.[3] But an examination of

*Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L.J. 16, 30–32 (1913) (modeling rights and duties as jural correlatives); 1 William Blackstone, *Commentaries* \*118–19 ("Now the rights of persons that are commanded to be observed by the municipal law are of two sorts; first, such as are due *from* every citizen, which are usually called civil *duties*; and, secondly, such as belong *to* him, which is the more popular acceptation of *rights* or *jura*. Both may indeed be comprized in this latter division; for, as all social duties are of a relative nature, at the same time that they are due *from* one man, or set of men, they must also be due *to* another." (emphases in original)).

[2] *See* Wesley Newcomb Hohfeld, *Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 26 Yale L.J. 710, 724–25 (1917) (comparing positive and negative duties); *see also* Joseph William Singer, *The Legal Rights Debate in Analytical Jurisprudence from Bentham to Hohfeld*, 1982 Wis. L. Rev. 975, 1044 (1982) (citing John W. Salmond, *First Principles of Jurisprudence* 172 (1893)).

[3] *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (identifying several different constitutional provisions that may serve as the basis for the right). It may be that the identification of multiple, separate sources of the right of

precedent reveals a general rule and a modified rule for inmates. Generally, the right of access imposes only negative duties: States and state actors cannot impede access to courts. *See, e.g.*, *Tennessee v. Lane*, 541 U.S. 509, 523 (2004). But in the prison setting, incarceration restricts inmates' access to courts. And that reality has led to two modifications to the right of access for prisoners. First, the Supreme Court has imposed a positive duty *on States* in their sovereign capacities to provide inmates with law-library materials or their equivalent. *See Bounds v. Smith*, 430 U.S. 817, 824 (1977) (requiring "*States* to shoulder affirmative obligations to assure all prisoners meaningful access to the courts" (emphasis added)).[4] Second, the negative duty in the prison setting is not

access reflects the specific context in which the right has been invoked. *Compare, e.g.*, *Chambers v. Balt. & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907) (grounding the right of access to courts in the Article IV Privileges and Immunities Clause where an out-of-state plaintiff sought to bring suit in a neighboring state's courts) *with Boddie v. Connecticut*, 401 U.S. 371, 380–81 (1971) (grounding the right in the Fourteenth Amendment Due Process Clause where filing fees prevented a couple from having an opportunity to be heard on a divorce action). An inmate's right of access for a direct appeal of a conviction or sentence may have a different constitutional grounding than the right has in the context of a collateral attack on a criminal judgment or a civil action challenging the conditions of confinement.

[4] *See also Lewis v. Casey*, 518 U.S. 343, 355 (1996) (explaining that the required materials or services are those needed for inmates "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"); *Simmons v. United States*, 142 S. Ct. 23, 24

3

as rigorous as it would otherwise be – it allows restrictions on access for "legitimate penological interests." *Turner v Safley*, 482 U.S. 78, 89 (1987); *see also Lewis v. Casey*, 518 U.S. 343, 350 (1996) (explaining that the right of access "prohibit[s] state prison officials from actively interfering with inmates'" right of access to courts). Thus, an inmate's right of access imposes a positive duty on States (to supply rudimentary law-library materials or their equivalent) and a mitigated negative duty on States and state actors (to refrain from impeding access to State-provided law-library materials without legitimate penological justification). But the right of access does not impose a positive duty personally on state actors, such as prison employees, to ensure that prison law libraries are furnished and stocked with the required materials.[5]

---

(2021) (Sotomayor, J., statement respecting the denial of certiorari) (emphasizing that *prisons* have the obligation to provide legal materials and tools inmates need to attack their sentences); *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000); *but see Lewis*, 518 U.S. at 365 (Thomas, J., concurring) (finding no constitutional basis for requiring the government to finance an inmate's right of access).

[5] The Majority Opinion rejects any distinction between States and individuals in the allocation of positive duties and negative duties in the context of the right of access. Instead, it imposes on individuals the same positive duty that States, in their sovereign capacities, have to supply and furnish law-library materials for inmates. In so doing, it takes comfort in extra-record evidence suggesting that corrections officers will be indemnified for breaching such a duty. But an indemnification agreement should not influence the announcement of a new constitutional obligation.

4

Under these rules, the prison guards here are entitled to judgment as a matter of law. Rivera claims that the guards violated his right of access while he was temporarily housed at a prison closer to the federal courthouse holding a two-day jury trial on his *pro se* excessive-force claim against other prison guards. *See Rivera v. O'Haire*, No. 1:15-cv-1659 (M.D. Pa.). Before trial, Rivera wanted law-library materials, and two guards at his temporary prison took him to the mini law library, but it lacked the resources that he wanted. Rivera and one of the guards attempted to obtain those materials from the internet, but they could not log on. Critically, the materials that Rivera wanted were unavailable because the prison did not provide them – not because either guard restricted his access to otherwise available resources. Thus, on the undisputed facts, neither guard interfered with Rivera's access to prison law-library materials, much less did either guard do so without legitimate penological justification.

Rivera went to trial and lost, but nothing in the record indicates that he raised his access issue in that proceeding. Instead, he sued the two guards at the prison where he was temporarily housed for violating his right of access. The District Court rejected Rivera's claim at summary judgment.

In validating Rivera's right-of-access claim, the Majority Opinion dramatically expands the right. It does so by grafting the State's positive duty onto individual-capacity actors. But the State as sovereign, not an individual-capacity actor, effectuated the inmate's incarceration, and thus, any positive duty should be borne only by the State. By extending the positive duty beyond States, the Majority Opinion makes guards and other prison employees personally liable if a prison law library fails to furnish law-library materials or their

5

equivalent.  That is new; that is bold; and that is a misapprehension of the Constitution.