**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2555

———————

SHERRY BEERS, Administrator of The Estate of Sean R. Beers, Deceased,

Appellant

v.

COUNTY OF NORTHUMBERLAND; BRUCE KOVACH, Individually and in his
Official Capacity; SAMUEL J. SCHICCATANO; JOSEPH M. KLEBON;
KYMBERLEY L. BEST; JAMES HOSKIN

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 4-22-cv-01101)
District Judge: Honorable Matthew W. Brann

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 6, 2024

Before:  HARDIMAN, PORTER, and AMBRO, <u>Circuit Judges</u>

(Opinion Filed: June 7, 2024)

OPINION[*]

**AMBRO**, Circuit Judge

Sherry Beers brought this suit under 42 U.S.C. § 1983 and state law after her son Sean Beers, a pretrial detainee, tragically committed suicide in his cell while housed at the Northumberland County Jail in Pennsylvania. The District Court dismissed her amended complaint with prejudice. Finding no reversible error, we affirm.

## I. Background

Little is known about the circumstances of Sean Beers' death.[1] According to the amended complaint, he was arrested on charges of aggravated sexual assault and disorderly conduct and placed in pretrial detention at the Northumberland County Jail in Coal Township, Pennsylvania on or about May 12, 2021. By May 18, he "was determined to be a suicidal threat" and attended a preliminary hearing wearing a suicide protection suit. Supp. App. 39. He was not, however, placed on a suicide watchlist. Four months later, on September 15, 2021, Sean committed suicide in his cell; he was taken to a nearby hospital, where he was pronounced dead. The complaint does not say how Sean died. Beers alleges only that the area near his cell was staffed by a female corrections officer, Mary Doe, who "was 'flirting' with an inmate and left [Sean] unattended[.]" *Id.* at 41. She also claims that

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] For clarity, we hereafter refer to the decedent as "Sean" and to his mother, the plaintiff, as "Beers."

"prior inmates had utilized their bedsheets as ligatures, but Defendants consistently and indifferently failed to take proper precautions to stop said suicides," *id.*, though she does not allege Sean died that way.

Beers, as administratrix of Sean's estate, filed suit under § 1983 and Pennsylvania law against Northumberland County (which operates the jail), Bruce Kovach (the jail's warden), Samuel Schiccatano, Joseph Klebon, and Kymberly Best (the County's Commissioners), and Mary Doe (an unidentified female correctional officer). She alleged all defendants violated the Fourteenth Amendment by showing deliberate indifference to Sean's medical needs, leading to his suicide (Count I).[2] She also asserted the County failed properly to staff and train its employees on suicide prevention (Count II) and sought damages under Pennsylvania's Wrongful Death and Survival statutes, 42 Pa. Cons. Stat. §§ 8301, 8302 (Counts III and IV). In response to limited discovery requests, the defendants provided a list of female employees working at the jail on the day of Sean's death, a shift roster, and a surveillance video of his cell. They then filed a motion to dismiss for failure to state a claim, which the District Court granted with leave to amend. Beers amended her complaint, alleging the facts just noted, and the District Court granted the defendants' second motion to dismiss all claims with prejudice. Beers timely appealed.

---

[2] Beers asserted violations of her son's Eighth and Fourteenth Amendment rights. But, as the District Court noted, a plaintiff seeking to hold prison officials liable for failing to prevent a pretrial detainee's suicide may assert a claim only under the Fourteenth Amendment (though it is "essentially equivalent" to a prisoner's claim under the Eighth Amendment). *Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017).

## II. Discussion[3]

To state a claim under § 1983, Beers had to allege she was deprived of a federally protected right by someone acting under color of state law. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The District Court first analyzed her Fourteenth Amendment deliberate indifference claim against Kovach (sued in his individual capacity), Doe (presumably sued in her individual capacity), and the Commissioners (if sued in their individual capacities). It then turned to Beers' *Monell* failure-to-train and failure-to-staff claims against the County and its Commissioners (if sued in their official capacities) and, finding neither sufficient to survive the defendants' motion to dismiss, also disposed of Beers' state-law claims that require sufficient allegation of a constitutional violation. We follow its lead.

Before turning to the merits, however, we briefly respond to Beers' main argument on appeal: that she cannot plead the facts necessary to survive dismissal absent discovery and, as a civil rights plaintiff, is entitled to discovery. But the case she cites, *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004), predates the Supreme Court's decision in *Ashcroft v.*

---

[3] We have jurisdiction under 28 U.S.C. § 1291 and review *de novo* the District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). Dismissal is appropriate if the plaintiff cannot plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff," *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citation omitted), but "we are not compelled to accept unsupported conclusions and unwarranted inferences … or a legal conclusion couched as a factual allegation," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks and citation omitted).

*Iqbal*, which made clear that federal pleading standards do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and that is true for "*all* civil actions" in federal court, including civil rights cases like Beers'. 556 U.S. 662, 678-79, 684 (2009) (internal quotation marks and citation omitted) (emphasis added); *see Rivera v. Monko*, 37 F.4th 909, 917 n.34 (3d Cir. 2022) (recognizing *Alston*'s abrogation by *Iqbal*). A complaint must contain "*factual* content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). The District Court recognized that Beers failed to allege enough facts to connect the dots and thus was not entitled to additional discovery. And Beers' appellate brief—a near-verbatim copy of her response to the defendants' motion to dismiss (save for the argument just noted)—does not call into question that reasoned determination. *Compare* Beers Br. 5-14, *with* Dist. Ct. Dkt. 22, 3-9; *see Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 157 (3d Cir. 2021) ("[S]imply [taking] the summary judgment section of [a] District Court brief and cop[ying] and past[ing] it into [an] appellate brief, with minor changes such as swapping 'Defendant' for 'Appellee' … [,] is not proper appellate advocacy.").

## A. Individual deliberate indifference claims

Because pretrial detainees like Sean have a clearly established constitutional right to be protected from the known risks of suicide, the Fourteenth Amendment prohibits jail officials from acting with deliberate indifference to that vulnerability. *See Woloszyn*, 396 F.3d at 319-20. To plead that claim, Beers bore the burden of establishing that (1) Sean had a "particular vulnerability to suicide," meaning "there was a strong likelihood, rather

5

than a mere possibility," that he would attempt it, (2) "the prison official knew or should have known of [Sean's] particular vulnerability," and (3) "the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to [Sean's] particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017) (internal quotation marks omitted).

The District Court properly dismissed the claim against Doe. Even assuming Beers adequately pled the first prong of the vulnerability-to-suicide framework based only on her allegation that Sean appeared in a suicide protection suit at a hearing four months before his death—though she alleges no facts suggesting a history of depression or mental illness, self-harm attempts, or any worrisome behavior during his detention—she does not allege Doe knew or should have known of Sean's suicidal propensities. Beers claims someone at the jail determined Sean was a suicidal threat shortly after being detained but nowhere alleges that this information was relayed to Doe or that Sean exhibited signs of suicidal behavior around the time of his death. Beers' conclusory statements that Doe was "recklessly indifferent" and "Defendants" had "actual notice" of Sean's vulnerability because he wore a suicide protection suit at his preliminary hearing (which Doe is not alleged to have attended), Supp. App. 41, 43, do not save the complaint absent factual allegations of knowledge. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). And without knowing Sean was suicidal at the time, Doe could not have been deliberately indifferent, as opposed to merely negligent, by leaving Sean's cell unattended.

6

The District Court also did not err in dismissing the claims against Kovach and the Commissioners for lack of personal involvement, which "can be shown through allegations of personal direction or of actual knowledge and acquiescence" if "made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As with Doe, there are no allegations that Kovach or the Commissioners knew of Sean's vulnerability to suicide—setting aside the conclusory statements regarding their culpability—or any other facts demonstrating their personal involvement. Moreover, any theory of supervisory liability against these defendants fails on its own terms, for Beers has not pled an underlying constitutional violation by Doe or any other correctional officer. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("[A]ny claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates.").

## B. *Monell* liability against the County[4]

Beers also alleges the County violated Sean's Fourteenth Amendment rights by failing properly to staff the jail and train its employees on suicide prevention. To succeed, Beers had to plead that "the [County] itself, through the implementation of a municipal policy or custom, cause[d] a constitutional violation." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436

---

[4] The District Court assumed that Beers sued the Commissioners in their individual and official capacities because the complaint does not specify, and we do as well. As any official-capacity claims against them essentially are claims against the County itself, they are subject to the same *Monell* standard for institutional liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).

7

U.S. 658, 691-95 (1978)). The custom or policy either must "itself violate[] the Constitution" or be "the 'moving force' behind the constitutional tort of one of its employees." *Id.* (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

We agree with the District Court that Beers' failure-to-staff claim cannot succeed, for she does not allege a municipal policy ("an official proclamation, policy, or edict") or custom (a practice so "well-settled and permanent as virtually to constitute law") of the County understaffing its jails. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation marks and citation omitted). Assuming she did, Beers does not link the jail's alleged staffing problems to Sean's death. *See id.* To the contrary, she alleges Sean's cell was unattended because Doe, who staffed the area near his cell, left to "'flirt[]' with an inmate," not because the jail's staff was spread too thin. Supp. App. 41.

Her failure-to-train claim fares no better. In that context, "a plaintiff need not allege an unconstitutional policy." *Roman*, 914 F.3d at 798. Instead, she "must demonstrate that a [municipality's] failure to train its employees reflects a deliberate or conscious choice," *id.* (internal quotation marks and citation omitted), and is "closely related to the ultimate injury," *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). Beers cannot make that showing. By alleging that, *despite* the jail's "requirements that all inmates in prison cells be checked periodically," no correctional officer adequately monitored her son, she predicates liability solely on a theory of *respondeat superior* by implying the staff did not follow jail guidance. Supp. App. 40. But she cannot do so under *Monell*. *See Colburn*, 946 F.2d at 1027. And even assuming she identified a lack of relevant training, it still would be too great a leap to

8

conclude she adequately pled that deficiency was a deliberate choice (or had anything to do with Sean's suicide). "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" *Thomas*, 749 F.3d at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Here, Beers alleges "Defendants knew or should have known that prior inmates had utilized their bedsheets as ligatures" but "consistently and indifferently failed to take proper precautions to stop said suicides and/or attempted suicides." Supp. App. 41. But she does not allege any facts to suggest those suicides—tragic as they are—are linked to a deficient training, or that the County had notice of any deficiency. *See Thomas*, 749 F.3d at 222-23. And "[w]ithout notice[,] … decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 223 (internal quotation marks and citation omitted). And assuming, yet again, Beers pled as much, she still does not tie those suicides and deficiencies to Sean's death, for she does not allege Sean died in the same manner as the other inmates. The District Court thus properly dismissed that claim as well.[5]

\* \* \* \*

Although every jail suicide is a tragedy, and we are mindful of Beers' circumstances, not every death amounts to a constitutional violation. For the reasons

---

[5] Because Beers failed adequately to plead a constitutional violation, the Court properly dismissed her wrongful death and survival claims that were premised on constitutional grounds. She concedes as much.

explained above, Beers failed to plead sufficient facts in that respect, and so her § 1983 and state-law claims against all defendants must fail. We affirm.